1  **BLUMENTHAL NORDREHAUG BHOWMIK**
   **DE BLOUW LLP**
2    Norman B. Blumenthal (State Bar #068687)
     Kyle R. Nordrehaug (State Bar #205975)
3    Aparajit Bhowmik (State Bar #248066)
   2255 Calle Clara
4  La Jolla, CA 92037
   Telephone: (858)551-1223
5  Facsimile: (858) 551-1232

6  Attorneys for Plaintiff

7

8

9

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

14  JAKARI WILSON, an individual, on          CASE No. **4:20-cv-05186-YGR**
    behalf of himself and on behalf of all
15  persons similarly situated,
                                               **PLAINTIFF'S NOTICE OF**
16                                             **MOTION AND MOTION FOR**
                  Plaintiff,                   **PRELIMINARY APPROVAL OF**
17                                             **CLASS SETTLEMENT;**
    vs.
18                                             **MEMORANDUM OF POINTS AND**
    WHOLESOME HARVEST BAKING,                  **AUTHORITIES IN SUPPORT**
19  LLC, a Limited Liability Company;
    BIMBO BAKEHOUSE LLC, a Limited
20  Liability Company; and DOES 1 through      Hearing Date: December 7, 2021
    50, inclusive,                             Hearing Time: 2:00 p.m.
21
                                               District Judge: Hon. Yvonne Gonzalez
22                Defendants.                  Rogers

23                                             Oakland Courthouse,
                                               Courtroom 1 - 4th Floor
24
                                               Action Filed: June 1, 2020
25

26

27

28

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2      **PLEASE TAKE NOTICE THAT** on December 7, 2021, at 2:00 p.m. in the

3  United States District Court for the Northern District of California, located at the

4  Oakland Courthouse, Courtroom 1 - 4th Floor, 1301 Clay Street, Oakland, CA 94612,

5  before District Judge Yvonne Gonzalez Rogers, Plaintiff Jakari Wilson ("Plaintiff") will

6  move for preliminary approval of the proposed class settlement with Defendants

7  Wholesome Harvest Baking, LLC and/or Bimbo Bakehouse LLC ("Defendants"). This

8  motion is unopposed as based on the Class Action Settlement Agreement ("Agreement")

9  between the parties filed concurrently with this motion.

10      The motion will be based on this Notice of Motion and the attached Memorandum

11  of Points and Authorities filed herewith, the Declaration of Kyle Nordrehaug and

12  attached exhibits, the argument of counsel and upon such other material contained in the

13  file and pleadings of this action.

14      Respectfully submitted,

15

16  Dated: October 29, 2021          BLUMENTHAL NORDREHAUG BHOWMIK
                                       DE BLOUW LLP
17
                                   By:    _____*/s/ Norman Blumenthal*_____
18                                        Norman B. Blumenthal
                                          Kyle R. Nordrehaug
19                                        Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

3

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.    THE SETTLEMENT TERMS AND PLAN OF ALLOCATION . . . . . . . . . . 4

V.     THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
       PRELIMINARY APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.    The Role Of The Court In Preliminary Approval Of A Class Action
             Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.    Factors To Be Considered In Granting Preliminary Approval . . . . . . . 8

             1.    The Class Representatives and Class Counsel Have Adequately
                   Represented the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             2.    The Settlement Was Reached Through Arm's Length
                   Negotiations and Is the Product of Serious, Informed
                   and Noncollusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . 9

             3.    The Relief Provided For The Class Is More Than Adequate in
                   Light of Value of the Claims, Similar Settlements, and the
                   Risks of Continued Litigation . . . . . . . . . . . . . . . . . . . . . . . . . 10

             4.    The Settlement Does Not Improperly Grant Preferential
                   Treatment To The Class Representative or Segments
                   of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

             5.    The *Hanlon* Factors Also Support the Settlement. . . . . . . . . . . . 16

VI.    THE CLASS IS PROPERLY CERTIFIED FOR
       SETTLEMENT PURPOSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII.   THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE. . . . 24

VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Cases</u>**:

3
*Adoma v. Univ. of Phoenix, Inc.*,
    913 F.Supp.2d 964 (E.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4

*Aguilar v. Wawona Frozen Foods*,
5       2017 U.S. Dist. LEXIS 76751, 2017 WL 2214936 (E.D. Cal 2017). . . . . . . . 17

6
*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7
*Ansari v. New York Univ.*,
8       179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9
*Armstrong v. Board of School Directors*,
    616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

*Birch v. Office Depot, Inc.*,
11       2007 U.S. Dist. LEXIS 102747 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . 16

12
*Brewer v. Salyer*,
    2017 U.S. Dist. LEXIS 101374, 2017 WL 2813178 (E.D. Cal. 2017) . . . . . . 17

13

*Brinker v. Superior Court*,
14       53 Cal. 4th 1004 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15
*Cacho v. Eurostar, Inc.*,
    43 Cal. App. 5th 885 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
17       213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 19

18
*Duran v. U.S. Bank National Assn.*,
    59 Cal. 4th 1 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19

*EEOC v. Kovacevich "5" Farms*,
20       2007 U.S. Dist. LEXIS 32330 (E.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . 20

21
*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
    630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22

*Gautreaux v. Pierce*,
23       690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

24
*Glass v. UBS Fin. Servs.*,
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007) . . . . . . . . . . . . . . 12, 14, 15, 19

25

*Hanlon v. Chrysler Co.*,
26       150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13, 16, 21

27
*Holman v. Experian Info. Solutions, Inc.*,
    2014 U.S. Dist. LEXIS 173698 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . 15

28

*In re Activision Sec. Litigation*,
    723 F.Supp. 1373 (N.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Wash. Public Power Supply System Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Wirebound Boxes Antitrust Lit.*,
    128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ingalls v. Hallmark Mktg. Corp.*,
    2009 U.S. Dist. LEXIS 131078 (C.D. Cal.2009). . . . . . . . . . . . . . . . . . . . . . 16

*Kirkorian v. Borelli*,
    695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Knight v. Red Door Salons, Inc.*,
    2009 U.S. Dist. LEXIS 11149 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . 16

*Kurihara v. Best Buy Co.*,
    2007 U.S. Dist. LEXIS 64224 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . 21, 23

*Kutzman v. Derrel's Mini Storage, Inc.*,
    2020 U.S. Dist. LEXIS 13314 (E.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . 18

*Laffitte v. Robert Half International, Inc.*,
    1 Cal. 5th 480 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ling v. P.F. Chang's China Bistor, Inc.*,
    245 Cal. App. 4th 1242 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Lockwood Motors, Inc. v. General Motors Corp.*,
    162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Louie v. Kaiser Found. Health Plan, Inc.*,
    2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . 6, 15

*Ma v. Covidien Holding, Inc.*,
    2014 WL 2472316, (C.D. Cal. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Maldonado v. Epsilon Plastics*, Inc.,
    22 Cal. App. 5th 1308 (2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mathein v. Pier 1 Imps. (U.S.), Inc.*,
    2018 U.S. Dist. LEXIS 71386 (E.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . 15

*Millan v. Cascade Water Services, Inc.*,
    310 F.R.D. 593 (E.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nordstrom Commission Cases*,
    186 Cal. App. 4th 576 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Phila. Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*,
    323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reber v. AIMCO/Bethesda Holdings, Inc.*,
    2008 WL 4384147 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rippee v. Boston Mkt. Corp.*,
    2006 U.S. Dist. LEXIS 101136 (S.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sepulveda v. Wal-Mart Stores, Inc.*,
    237 F.R.D. 229 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Stanton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22

*Stovall-Gusman v. W.W. Granger, Inc.*,
    2015 U.S. Dist. LEXIS 78671 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stuart v. Radioshack Corp.*,
    2010 U.S. Dist. LEXIS 92067 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tate v. Weyerhaeuser Co.*,
    723 F.2d 598 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Viceral v. Mistras Grp., Inc.*,
    2016 WL 5907869 (N.D. Cal. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*White v. Local 942*,
      688 F.2d 85 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## **Statutes:**

California Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

California Labor Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. Proc. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## **Secondary Authorities:**

2 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) . . . . . . . . . . 6, 25

*Manual for Complex Litigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 25

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3    Plaintiff Jakari Wilson ("Plaintiff") and Defendants Wholesome Harvest Baking,

4    LLC and/or Bimbo Bakehouse LLC ("Defendants") have reached a full and final

5    Settlement of the above-captioned class action, which is embodied in the Class Action

6    Settlement Agreement ("Agreement") filed concurrently with the Court as <u>Exhibit #1</u> to

7    the Declaration of Kyle Nordrehaug ("Decl. Nordrehaug").[1]  By this motion, Plaintiff

8    seeks preliminary approval of the Agreement as fair, reasonable, and adequate, entry of

9    the Preliminary Approval Order submitted herewith, and scheduling of the Final

10    Approval Hearing to determine final approval of the Settlement.

11

## II.    SUMMARY OF THE SETTLEMENT

12    Counsel for the Parties, after litigation and contentious settlement negotiations,

13    agreed to a settlement that is fair, reasonable, and favorable to the Class.  The Class is

14    defined as "all individuals who are or previously were employed by Defendants in

15    California who were classified as non-exempt employees during the Class Period."

16    (Agreement at ¶ I(C).)   The Class Period is June 1, 2016 through the earlier of

17    Preliminary Approval of the Settlement or November 18, 2021.  (Agreement at ¶ I(J).)

18    Decl. Nordrehaug, ¶3.

19    Under the terms to which the Parties have agreed, Defendants agree to pay One

20    Million Seven Hundred Fifty Thousand Dollars ($1,750,000) (the "Gross Settlement

21    Amount") in consideration for the settlement and the release of claims as described in

22    the Agreement.  (Agreement at ¶ III(B).)  The Gross Settlement Amount consists of

23    Settlement Administration Expenses, Class Counsel Fees Payment, Class Counsel

24    Litigation Expenses Payment, the Class Representative Service Payment, the PAGA

25    Payment, and the Net Settlement Amount to be distributed as Settlement Shares to

26    Participating Class Members.  (Agreement at ¶ I(S).)   The employer's share of payroll

27    _____

28    [1]  Capitalized terms have the same meaning as in the Agreement.

1  taxes will be paid by Defendants in addition to the Gross Settlement Amount.
2  (Agreement at ¶ III(B).)  Decl. Nordrehaug, ¶4.

3          This is an all-in Settlement. There is no reversion of any portion of the Gross
4  Settlement Amount to Defendants, and no claim form is required to be paid. (Agreement
5  at ¶ III(B).)  Class Members who do not opt-out of the Class by timely submitting an
6  opt-out request shall be paid their share of the Net Settlement Amount based on the
7  number of workweeks worked by the Class Member during the Class Period.
8  (Agreement at ¶ III(D).)  Decl. Nordrehaug, ¶5.

9          This is an excellent result for the members of the Class.  The litigation risks that
10  the Plaintiff and Class Members face if the case were not settled include, among other
11  things, an adverse decision on the merits, loss of motions which would result in limiting
12  any exposure, the possibility that a trial would return a less favorable verdict, and
13  possible appellate review.  Liability in this case was uncertain because the Court, as the
14  stipulated trier of fact, may have found that some or all of the Class Members were
15  properly compensated and/or that Defendants complied with applicable law.  Decl.
16  Nordrehaug, ¶6.  These defenses could have reduced the amount recovered or a judgment
17  in favor of Defendants with no recovery at all for the members of the Class. Class
18  Counsel and Plaintiff wish to avoid these risks and uncertainties, as well as the
19  consumption of time and resources of litigation, through settlement pursuant to the terms
20  and conditions of the Agreement.  Decl. Nordrehaug, ¶6.

21  **III.    NATURE OF THE CASE**

22          The procedural history is set forth at length in the accompanying Declaration of
23  Nordrehaug at paragraphs 7 through 12, and is summarized below.  Plaintiff initially
24  filed the Class Action against Defendant in the Superior Court of California, Contra
25  Costa County, and then also filed a separate PAGA Action against Defendant in the same
26  Court based on the same factual allegations. Decl. Nordrehaug, ¶¶ 7-9.  On July 29,
27  2021, Plaintiff filed an amended complaint ("Amended Complaint") [Doc. No. 32] which
28  adds the Fair Labor Standards Act ("FLSA") claim as a predicate violation to the Unfair

1    Competition Law ("UCL") cause of action in the Action, and the PAGA claims as set

2    forth in the PAGA Action, and the PAGA Action will be dismissed without prejudice so

3    that approval of the entire settlement could be sought in this Action.

4        Class Counsel conducted significant research and investigation in furtherance of

5    the prosecution of the Action. This investigation, research and litigation included, among

6    other things, (a) multiple conferences with Plaintiff's and Defendants' counsel; (b)

7    inspection and analysis of hundreds of pages of documents and other information

8    produced by Plaintiff and Defendants informally during the litigation of the Action and

9    in preparation for mediation (including class data); (c) analysis of the numerous legal

10   positions taken by Defendant; (d) investigation into the viability of class treatment of the

11   claims asserted in the Action; (e) analysis of potential class-wide damages, including

12   reviewing class data, and analyzing information sufficient to understand Defendants'

13   potential defenses thereto; (f) research of the applicable law with respect to the claims

14   asserted in the Complaint as well as the potential defenses thereto; and (g) assembling

15   and analyzing extensive data and information for calculating damages.    Decl.

16   Nordrehaug, ¶10.

17       Class Counsel has extensive experience in litigating wage and hour class actions

18   in California and has thoroughly analyzed the value of the claims during the prosecution

19   of this Action.  Decl. Nordrehaug, ¶11.

20       Following the investigation of the claims by both Parties, the Parties agreed to

21   engage in private mediation.  The Parties attended an all-day mediation on April 14,

22   2021 before Tripper Ortman, a respected and experienced mediator.  The mediation

23   included discussion and examination of the parties' respective positions on the legal and

24   factual issues raised on behalf of the Class.   At all times, the parties' settlement

25   negotiations have been non-collusive, adversarial, and at arm's length.  At the conclusion

26   of the mediation, the Parties were unable to reach a settlement.  Through continued

27   negotiations through the Mediator, culminating in a mediator's proposal, the Parties

28   agreed on the basic terms of a class settlement.  The Parties then negotiated the final

1    Agreement now submitted for this Court's consideration.  Decl. Nordrehaug, ¶12.

2    **IV.    THE SETTLEMENT TERMS AND PLAN OF ALLOCATION**

3         **A.    The Gross Settlement Amount**

4              To implement the terms of this Settlement, Defendants agree to pay the Gross

5    Settlement Amount of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000)

6    in full and complete satisfaction of the Released Class Claims.  (Agreement at ¶ III(B).)

7    The Gross Settlement Amount consists of all payments to Class Members from the Net

8    Settlement Amount, plus (i) the Settlement Administration Expenses, (ii) the Class

9    Counsel Fees Payment and Class Counsel Litigation Expenses Payment, (iii) the PAGA

10   Payment, and (iv) the Class Representative Service Payment.  (Agreement at ¶ III(C)-

11   (D).)  The remainder of the Gross Settlement Amount after the deduction of the Court-

12   approved amounts for Settlement Administration Expenses, Class Counsel Fees

13   Payment, Class Counsel Litigation Expenses Payment, the PAGA Payment and the Class

14   Representative Service Payment (called the "Net Settlement Amount"), shall be

15   distributed to Participating Class Members as their Settlement Shares.  (Agreement at ¶¶

16   I(U) and (III)(D).)  Decl. Nordrehaug, ¶13.

17        **B.    Settlement Shares**

18             Each Class Member who does not request exclusion ("Participating Class

19   Members") shall be entitled to a pro rata portion of the Net Settlement Amount.  The

20   Settlement Share for each Participating Class Member will be calculated by (a) dividing

21   the Net Settlement Amount by the total number of workweeks the Participating Class

22   Members were employed by Defendants during the Class Period to determine a dollar

23   amount per week ("Weekly Rate"); and (ii) multiplying the number of workweeks each

24   Participating Class Member was employed by Defendants by the Weekly Rate to

25   calculate each Participating Class Member's individual Settlement Share.  (Agreement

26   at ¶ III(D)(2).)  Decl. Nordrehaug, ¶14.

27             The Gross Settlement Amount will be paid by Defendants within fifteen (15)

28   business days after the Effective Date. (Agreement at ¶ III(H)(10).)  Any checks issued

1  shall remain valid and negotiable for one hundred eighty (180) days, and any funds not

2  distributed after the expiration of the settlement checks shall be paid to the California

3  Controller's Unclaimed Property Fund to be held for the benefit of the Participating

4  Class Member.  (Agreement at ¶ III(H)(11).)  Decl. Nordrehaug, ¶15.

5  **C.    Scope of the Release**

6  The scope of the release by all Class Members who do not opt out tracks the scope

7  of the allegations in the Action.  As of the Effective Date, Defendants shall be entitled

8  to a release from the Participating Class Members of all Released Class Claims, which

9  are:

10 any and all wage and hour claims, obligations, demands, actions, rights,
   causes of action, and liabilities (including state statutory and common law
11 claims) alleged in the Action, or that could have been alleged based on the
   facts alleged in the Action, that arose during the Class Period, including: (a)
12 failure to pay overtime; (b) failure to pay minimum wages; (c) failure to
   timely pay wages during employment; (d) failure to pay final wages on
13 termination; (e) failure to provide accurate itemized wage statements; (f)
   failure to provide compliant meal and rest periods; (g) failure to pay meal
14 and rest period premiums; (h) failure to reimburse for business-related
   expenses; (i) failure to pay wages due to discharged and quitting
15 employees; (j) failure to maintain required records; (k) claims that are or
   were asserted or that could have been asserted based on the facts alleged in
16 the Action; and (l) penalties (including civil and statutory penalties,
   including penalties under PAGA), liquidated damages, punitive damages,
17 interest, attorneys' fees, litigation costs, restitution, equitable relief, or
   additional damages which allegedly arise from the claims described in (a)
18 through (k) above under any applicable law, which arose during the Class
   Period, and expressly excluding all other claims, including claims for
19 wrongful termination, unemployment insurance, disability, social security,
   workers' compensation, and class claims outside of the Class Period and
20 PAGA claims outside of the PAGA Period.

21 (Agreement at ¶ III(I)(1).)  Decl. Nordrehaug, ¶16.

22 **D.    Settlement Administration**

23 Subject to Court approval, the Parties have agreed on ILYM Group to administer

24 the settlement in this action ("Settlement Administrator").  (Agreement at ¶ III(G).)  The

25 Settlement Administration Expenses will not exceed $20,000.    (Agreement at ¶

26 III(C)(3).)  Decl. Nordrehaug, ¶17.

27 **E.    Payments to the Plaintiff and Class Counsel**

28 Class Counsel will apply to the Court for an award of reasonable attorneys' fees

1  in an amount not to exceed 1/3 of the Gross Settlement Amount, and for reimbursement

2  of reasonable expenses in an amount not to exceed $30,000, subject to Court approval.

3  (Agreement at ¶ III(C)(2).)   Plaintiff will also apply for Court approval of a service

4  award in an amount not to exceed $10,000 in consideration for his service as the sole

5  representative of the Class.  (Agreement at ¶ III(C)(1).)  Decl. Nordrehaug, ¶18.

6
7  ## V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

8          When a proposed class-wide settlement is reached, the settlement must be

9  submitted to the court for approval.  Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A.

10 Conte, *Newberg on Class Actions* (3d ed. 1992) at §11.41, p.11-87.  Preliminary

11 approval is the first of three steps that comprise the approval procedure for settlements

12 of class actions.  *See*, *e.g.*, *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist.

13 LEXIS 78314 (S.D. Cal. 2008).  The second step is the dissemination of notice of the

14 settlement to all class members.  The third step is a final settlement approval hearing, at

15 which evidence and argument concerning the fairness, adequacy, and reasonableness of

16 the settlement may be presented and class members may be heard regarding the

17 settlement.  *See Manual for Complex Litigation*, Second §30.44 (1993).

18         The question presented on a motion for preliminary approval of a proposed class

19 action settlement is whether the proposed settlement is "within the range of possible

20 approval." *Manual for Complex Litigation*, Second §30.44 at 229; *Gautreaux v. Pierce*,

21 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Louie*, *supra*, at *7.   Preliminary approval is

22 merely the prerequisite to giving notice so that "the proposed settlement . . . may be

23 submitted to members of the prospective Class for their acceptance or rejection." *Phila.*

24 *Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D.

25 Pa. 1970).  There is an initial presumption of fairness when a proposed settlement, which

26 was negotiated at arm's length by Class Counsel, is presented for court approval.

27 *Newberg*, 3d Ed., §11.41, p.11-88.  However, the ultimate question of whether the

28 proposed settlement is fair, reasonable and adequate is made after notice of the

1  settlement is given to the class members and a final settlement hearing is held by the
2  Court.

3      **A.    The Role Of The Court In Preliminary Approval Of A Class Action**
4              **Settlement**

5      "The parties must provide the court with information sufficient to enable it to
6  determine whether to give notice of the propos[ed] [settlement] to the class." Fed. R.
7  Civ. P., rule 23(e)(1)(A). The approval of a proposed settlement of a class action suit is
8  a matter within the broad discretion of the trial court. *Stanton v. Boeing*, 327 F.3d 938,
9  959 (9th Cir. 2003). Preliminary approval does not require the trial court to answer the
10 ultimate question of whether a proposed settlement is "fair, reasonable and adequate."
11 *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Manual for Complex*
12 *Litigation*, Third, §§ 20.212. At final approval of a settlement, a court is to balance
13 several factors, including: "[i] the strength of the plaintiffs' case; [ii] the risk, expense,
14 complexity, and likely duration of further litigation [and] the risk of maintaining class
15 action status throughout the trial; [iii] the amount offered in settlement; [iv] the extent
16 of discovery completed and the stage of the proceedings; [and] [v] the experience and
17 views of counsel ...." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

18     In considering a potential settlement for preliminary approval purposes, the trial
19 court does not have to reach any ultimate conclusions on the issues of fact and law which
20 underlie the merits of the dispute, and need not engage in a trial on the merits. *Officers*
21 *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S.
22 1217 (1983). The question of whether a proposed settlement is fair, reasonable and
23 adequate necessarily requires a judgment and evaluation by the attorneys for the parties
24 based upon a comparison of "the terms of the compromise with the likely rewards of
25 litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464
26 U.S. 818 (1983) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer*
27 *Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). Therefore, many courts
28 recognize that the opinion of experienced counsel supporting the settlement is entitled

1  to considerable weight. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988);

2  *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger*, 698 F.2d

3  at 74; *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher*

4  *Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

5  **B.    Factors To Be Considered In Granting Preliminary Approval**

6  A number of factors are to be considered in evaluating a settlement for purposes

7  of preliminary approval.  No one factor should be determinative, but rather all factors

8  should be considered.  "If the proposed settlement appears to be the product of serious,

9  informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

10  grant preferential treatment to class representatives or segments of the class, and falls

11  within the range of possible approval, then the court should direct that the notice be

12  given to the class members of a formal fairness hearing."  *In re Tableware Antitrust*

13  *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2011).  To make this determination, the

14  Court must consider the following factors:

15  (A) the class representative and class counsel have adequately represented
the class;

16  (B) the proposal was negotiated at arm's length;

17  (C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;

18  (ii) the effectiveness of any proposed method of distributing relief to
the class, including the method of processing class-member claims;

19  (iii) the terms of any proposed award of attorneys' fees, including
timing of payment; and

20  (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

21  Fed. R. Civ. P. 23(e)(2).

22  Courts also examine the *Hanlon* factors in addition to conducting a

23  range-of-reasonableness analysis at the preliminary stage, reasoning it is better to closely

24  scrutinize the settlement terms at the earliest opportunity so that if a fatal flaw exists, it

25  can be addressed before the parties "waste a great deal of time and money in the notice

26  and opt-out process." *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593 (E.D. Cal.

27  2015). Here, the settlement satisfies all of these criteria.

28  **1.    The Class Representative and Class Counsel Have Adequately**

1

**Represented the Class**

2       The proposed Class Representative and Class Counsel have more than adequately

3  represented the Class Members and Aggrieved Employees.  The Parties scheduled a

4  private mediation to take place before Tripper Ortman, Esq., a respected and experienced

5  mediator for class actions and wage and hour lawsuits (the "Mediator").  (Decl.

6  Nordrehaug, ¶ 12.)  Prior to mediation, Defendants provided to Plaintiff and Class

7  Counsel payroll and employment data and other information regarding the Class

8  Members, various internal documents, and other compensation and employment-related

9  materials. (Decl. Nordrehaug, ¶ 10.) Class Counsel analyzed the data with the assistance

10  of damages expert Berger Consulting and prepared and submitted a mediation brief to

11  the Mediator.  (Decl. Nordrehaug, ¶¶ 22-24.)  Class Counsel is experienced with these

12  class and PAGA claims and has settled similar claims on behalf of employees.  (Decl.

13  Nordrehaug, ¶31.)  Most importantly, Plaintiff and Class Counsel believe that this

14  settlement is fair, reasonable and adequate and in the best interests of the Class Members.

15       **2.  The Settlement Was Reached Through Arm's Length Negotiations and Is the Product of Serious, Informed and Noncollusive Negotiations**

16

17       This settlement is the result of extensive and hard fought negotiations.  Defendants

18  deny each and every one of the claims and contentions alleged in this Action.

19  Defendants have asserted and continues to assert many defenses thereto, and has

20  expressly denied and continues to deny any wrongdoing or legal liability arising out of

21  the conduct alleged in the Action.  Settlement negotiations took place between

22  experienced counsel.   Counsel for the Parties engaged in formal mediation and

23  settlement negotiations and because the Parties were unable to reach a settlement on the

24  day of the mediation, had ongoing negotiations post-mediation.  Only after extensive,

25  noncollusive negotiations, the Parties reached an agreement based on a mediator's

26  proposal, the experience of counsel, and the uncertainties of protracted litigation.

27  Importantly, Plaintiff and Class Counsel believe that this settlement is fair, reasonable

28  and adequate.  Decl. Nordrehaug, ¶19.

1  Class Counsel has conducted a thorough investigation into the facts of the class

2  action, including a review of relevant documents and data and a diligent investigation

3  of the Class Members' claims against Defendant. Class Counsel also retained an expert

4  to prepare a damage valuation for use in the mediation and negotiations. Decl.

5  Nordrehaug, ¶20.

6  Plaintiff and Class Counsel recognize the expense and length of continuing to

7  litigate and trying this Action against Defendants through possible appeals, which could

8  take several years, and are also mindful of and recognize the inherent problems of proof

9  under, and alleged defenses to, the claims asserted in the Action. In the absence of an

10  approved settlement, Plaintiff would face a protracted litigation course, including a

11  motion for summary judgment, and trial and appellate proceedings that would consume

12  time and resources and present each of them with ongoing litigation risks and

13  uncertainties. Based on the foregoing documents and data, and their own independent

14  investigation and evaluation, Class Counsel is of the opinion that the settlement with

15  Defendants for the consideration and on the terms set forth in the Settlement is fair,

16  reasonable, and adequate in light of all known facts and circumstances, including the risk

17  of significant delay, defenses asserted by Defendants, and potential appellate issues.

18  Decl. Nordrehaug, ¶ 21.

19  Here, the negotiations have been hard-fought and aggressive with capable

20  advocacy on both sides. Accordingly, "[t]here is likewise every reason to conclude that

21  settlement negotiations were vigorously conducted at arms' length and without any

22  suggestion of undue influence." *In re Wash. Public Power Supply System Sec. Litig.*,

23  720 F. Supp. 1379, 1392 (D. Ariz. 1989).

24  **3.    The Relief Provided For The Class Is More Than Adequate in Light of**
     **Value of the Claims, Similar Settlements, and the Risks of Continued**
25  **Litigation**

26  The proposed Settlement herein has no "obvious deficiencies" and is well within

27  the range of possible approval. All Class Members will receive an opportunity to

28  participate in and receive payment according to the same formula. The Gross Settlement

1  Amount provides an average value of $2,278 per Class Member and $40 per workweek,
2  and after deductions, the Net Settlement Amount provides an average recovery of $1,408
3  per Class Member and $25 per work week.  Decl. Nordrehaug, ¶22.

4      In advance of settlement negotiations, Class Counsel received class data
5  concerning the Class, which permitted Class Counsel to make an intelligent evaluation.
6  For the individuals whose claims are at issue in this Action, Class Counsel reviewed the
7  data and used information provided by Defendants to determine the potential damage
8  valuation.  The calculations to compensate for the amount due for the Class at the time
9  of the mediation were calculated by Berger Consulting, Plaintiff's damage expert.  Decl.
10 Nordrehaug, ¶22.

11     Using the class data, based upon the analysis of Plaintiff's expert, Plaintiff
12 calculated that the maximum valuation for mediation as follows: off the clock damages
13 due to rounding were $188,768, unpaid overtime wages dues to the miscalculation of the
14 regular rate were $39,733, meal period damages were $2,219,198 based upon an alleged
15 58% potential violation rate from time punch data, rest period damages were $3,660,320
16 based upon an alleged 100% violation rate under Plaintiff's theory of rest periods being
17 cut short, and unreimbursed expenses damages were $325,346.  As a result, Plaintiff's
18 total damage valuation at mediation, not counting potential penalties, was $6,433,364.
19 As to penalties, Plaintiff's expert calculated the maximum wage statement penalties to
20 be $1,083,700 and the maximum waiting time penalties to be $2,035,683, however, these
21 wage statement and waiting time penalties claims potentially have a much smaller value,
22 even if damages were awarded, to the extent that they are derivative of the meal and rest
23 break claims.[2]  These claims faced significant challenges to establish class-wide liability

24  _____

25    [2]  While Plaintiff alleged claims for statutory penalties pursuant to Labor Code
26 Sections 203 and 226, Plaintiff recognized that these claims were subject to various
   defenses asserted by Defendants, including, but not limited to, a good faith dispute
27 defense as to whether any premium wages for meal or rest periods or other wages or
28 expenditures were owed.  See generally *Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008

1   given Defendants' facially lawful policies.  Decl. Nordrehaug, ¶22.

2       The settlement of $1,750,000, before deductions, represents more than 27% of the

3   estimated maximum damages for the Class, assuming these amounts could be proven in

4   full at trial.  Importantly, the above maximum calculations should then be adjusted in

5   consideration for both the risk of certification and the risk of establishing class-wide

6   liability on all claims. This settlement amount is fair and reasonable given the defenses

7   asserted by Defendants.  Because the alternative to this Settlement could be the Class

8   receiving nothing or less after trial, Plaintiff accepted the settlement as fair and

9   reasonable.  Clearly the goal of this litigation to obtain redress for the Class has been

10  met.  Decl. Nordrehaug, ¶22.

11      In  *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007) the

12  federal district court for the Northern District of California approved a settlement of an

13  action claiming unpaid overtime wages where the settlement amount constituted

14  approximately 25% of the estimated damages for the class. In *Stovall-Gusman v. W.W.*

15  *Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. 2015), the District Court

16  granted final approval where "the proposed Gross Settlement Amount represents

17  approximately 10% of what class might have been awarded had they succeeded at trial."

18  _____

19  WL 4384147, at *9 (C.D. Cal. 2008) (granting defendant's motion for summary
20  judgment on claim for failure to provide accurate itemized wage statements "because a
    good faith dispute exists as to whether [plaintiffs] are exempt, [therefore, defendant] was
21  not 'knowing and intentional' in failing to provide [Section 226] statements"); See
22  *Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful
    failure to pay wages if the employer and employee have a good faith dispute as to
23  whether and when the wages were due.").  Given the fact that the off-the-clock claim
24  based on interview time has been dismissed by some Courts, Defendants could certainly
    contend this good faith defense.  Additionally, the question of whether violations of the
25  meal period regulations, which require payment of a "premium wage" for each improper
26  meal period, give rise to claims under sections 203 and 226.  See *Ling v. P.F. Chang's*
    *China Bistor, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) and *Maldonado v. Epsilon*
27  *Plastics*, Inc., 22 Cal. App. 5th 1308, 1336 (2018).  Thus, the viability of Plaintiff's
28  claims on these theories is very uncertain.

1   In *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir.
2   2000), the Court of Appeals affirmed the approval of a class settlement which
3   represented "roughly one-sixth of the potential recovery". See also *Viceral v. Mistras*
4   *Grp., Inc.*, 2016 WL 5907869 (N.D. Cal. 2016) (approving wage and hour class action
5   settlement amounting to 8.1% of full value); *Ma v. Covidien Holding, Inc.*, 2014 WL
6   2472316, (C.D. Cal. 2014) (approving wage and hour class action settlement worth
7   "somewhere between 9% and 18%" of maximum valuation). Here the settlement
8   consideration similarly constitutes a higher percentage of the estimated realistic damages
9   for the Class.

10   Where both sides face significant uncertainty, the attendant risks favor settlement.
11   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Here, a number of
12   defenses asserted by Defendants presented serious threats to the claims of Plaintiff and
13   the other Class Members. Defendants contend that Defendants' employment practices
14   complied with all applicable Labor laws.

15   For example, Defendants argued that all work time was paid for and that the
16   regular rate calculation was lawful. Defendants contend that their meal and rest period
17   policies fully complied with California law and that Defendants' timekeeping system
18   recorded meal periods, and was not required to record rest periods. Defendants argued
19   that the California Supreme Court decision in *Brinker v. Superior Court*, 53 Cal. 4th
20   1004 (2012), weakened Plaintiff's claims, on liability, value, and class certifiability.
21   Defendants argued that any late or short meal periods were the voluntary decision of the
22   employee, and not the result of a failure of Defendants to provide a meal or rest period.
23   Defendants also argue that based on their facially lawful practices, they acted in good
24   faith and without willfulness, which if accepted would negate the claims for waiting time
25   penalties and/or inaccurate wage statements. In fact, under the current state of the law,
26   it is questionable whether these penalties could be awarded at all based upon the alleged
27   meal and rest period violations as several Courts have held that meal and rest period
28   violations do not give rise to wage statement or waiting time penalties. See e.g. *Ling v.*

*P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016).  Finally, Defendants assert defenses to the amount of damages claimed and the imposition of any penalties.  If successful, Defendants' defenses could eliminate or substantially reduce any recovery to the Class.  While Plaintiff believes that these defenses could be overcome, Defendants maintain these defenses have merit and therefore present a serious risk to recovery.  Decl. Nordrehaug at ¶23.

Moreover, there was also a significant risk that, if the Action was not settled, Plaintiff would be unable to obtain class certification and maintain a certified class through trial or demonstrate that his PAGA claim is manageable, and thereby not recover on behalf of any employees other than himself.  Plaintiff is aware of cases where class certification of similar claims was denied.  *See e.g. Cacho v. Eurostar, Inc.*, 43 Cal. App. 5th 885 (2019) (denying certification of meal and rest break claims).  At the time of the mediation, Defendants forcefully opposed the propriety of class certification and the manageability of Plaintiff's PAGA claim, arguing that individual issues precluded such findings.  Further, as demonstrated by the California Supreme Court decision in *Duran v. U.S. Bank National Assn.*, 59 Cal. 4th 1 (2014), there are significant hurdles to overcome for a class-wide recovery even where the class has been certified.  While other cases have approved class certification in wage and hour claims, class certification in this action would have been hotly disputed and was by no means a foregone conclusion.  Decl. Nordrehaug at ¶24.

Finally, the proposed method of distribution will be effective as payments will be made automatically to every Participating Class Member, without the need to submit a claim form.  The Agreement sets forth all the terms of Settlement, and there are no other agreements between the Parties that would need to be identified under Rule 23(e)(3).  Decl. Nordrehaug, ¶26.

After vigorous negotiations and recognizing the potential risks, the Parties agreed to the settlement of $1,750,000.  As a federal district court held in *Glass*, where the parties faced uncertainties similar to those here:

1
2
3
4

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." See *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000).

5
6

*Glass*, *supra*, 2007 U.S. Dist. LEXIS 8476, at *11-12.

7

Here, the risk of further litigation is substantial.

8

### 4.    The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments of The Class

9
10
11
12
13
14
15
16
17
18
19
20

The relief provided in the settlement will benefit all Class Members equally. The settlement does not improperly grant preferential treatment to the Class Representative or any individual segments of the Class. Each Class Member will be entitled to cash payment based on the plan of allocation. The Settlement Share for each Participating Member in the California Class will be determined based upon the weeks worked by that individual. Decl. Nordrehaug at ¶14. Plaintiff will apply to the Court for a service award in consideration for his service and for the risks undertaken on behalf of the Class Members and the Aggrieved Employees. Plaintiff performed his duties admirably by working with Class Counsel. See Decl. Nordrehaug at ¶28. At this stage, the requested Plaintiff's service award is well within the accepted range of awards for purposes of preliminary approval.[3]  The Declaration of Nordrehaug at ¶32 provides a long list of

21
22
23
24
25
26
27
28

---

[3] See e.g. *Mathein v. Pier 1 Imps. (U.S.), Inc.*, 2018 U.S. Dist. LEXIS 71386 (E.D. Cal. 2018) (awarding $12,500 where average class member payment was $351); *Holman v. Experian Info. Solutions, Inc.*, 2014 U.S. Dist. LEXIS 173698 (N.D. Cal. 2014) (approving $10,000 service award where class member recovery was $375); *Louie v. Kaiser Foundation Health Plan, Inc*., 2008 WL 4473183, *7 (S.D.Cal. 2008) (awarding $25,000 service award to each of six plaintiffs in overtime class action); *Glass v. UBS Fin. Servs.*, 2007 WL 221862, *16-17 (N.D.Cal. 2007) (awarding $25,000 service award in overtime class action and a pool of $100,000 in enhancements ). The payment of service award to the named plaintiffs in a wage and hour class action is approved by settled authority in the Ninth Circuit, and the requested amount of $10,000 is reasonable in light of the amount approved in the other decisions.

1    courts across California and the Ninth Circuit which have awarded service awards in the

2    amount of $10,000 or higher, thus establishing that the requested service award in this

3    matter is "within the range of reasonableness", subject to a final determination by this

4    Court at final approval.

5        Finally, there is no indication of any collusion or preferential treatment. The Ninth

6    Circuit in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (2011)

7    identified three "subtle signs that class counsel have allowed pursuit of their own

8    self-interests ... to infect the negotiations:" "(1) when counsel receive a disproportionate

9    distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement

10   (i.e., an arrangement where defendant will not object to a certain fee request by class

11   counsel); and (3) when the parties create a reverter that returns unclaimed fees to the

12   defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *Bluetooth*,

13   654 F.3d at 947).   Here, the facts do not establish any collusion.   Class Counsel's

14   requested fee award is in line with awards in other employment cases.   See e.g. *Laffitte*

15   *v. Robert Half International, Inc.*, 1 Cal. 5th 480 (2016); *Knight v. Red Door Salons,*

16   *Inc.*, 2009 U.S. Dist. LEXIS 11149, *17 (N.D. Cal. 2009) ("'nearly all common fund

17   awards range around 30%'") (quoting *In re Activision Sec. Litigation*, 723 F.Supp. 1373

18   (N.D. Cal. 1989)); *Ingalls v. Hallmark Mktg. Corp.*, 2009 U.S. Dist. LEXIS 131078

19   (C.D. Cal.2009) (awarding 33.33% fee on a $5.6 million wage and hour class action);

20   *Birch v. Office Depot, Inc.*, 2007 U.S. Dist. LEXIS 102747 (S.D. Cal. 2007) (awarding

21   a 40% fee on a $16 million wage and hour class action); *Rippee v. Boston Mkt. Corp.*,

22   2006 U.S. Dist. LEXIS 101136 (S.D. Cal. 2006) (awarding a 40% fee on a $3.75 million

23   wage and hour class action); *Stuart v. Radioshack Corp.*, 2010 U.S. Dist. LEXIS 92067,

24   *15-18 (N.D. Cal. 2010) (awarding attorneys' fees amounting to one-third of a $4.5

25   million class settlement).   Importantly, the Settlement is entirely non-reversionary.   The

26   absence of any sign of collusion and the arm's length negotiations before an experienced

27   mediator all support the approval of the Settlement.

28       **5.    The *Hanlon* Factors Also Support the Settlement**

1

### a.    The Strength of Plaintiff's Case

The Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted). In so doing, however, the Court does "not reach 'any conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation.'" *Brewer v. Salyer*, 2017 U.S. Dist. LEXIS 101374, 2017 WL 2813178, at *3 (E.D. Cal. 2017).

Here, Defendants deny all allegations of wrongdoing and allege numerous affirmative defenses relating not only to Plaintiff's claims, but also to class certification. Defendants assert facts that could negate essential elements of Plaintiff's claims. Defendants contend, for example, that their employees were able to take meal and rest breaks. Further, there could be significant problems of proof regarding the extent to which Class Members and Aggrieved Employees allegedly missed meal and rest breaks during the Class Period. Decl. Nordrehaug at ¶23. Plaintiff's willingness to settle this action at a discount to the maximum estimated recovery is not suspect or improvident in light of such considerations. This factor weighs in favor of approval.

### b.    The Risk, Expense, Complexity and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Moreover, "[e]mployment law class actions are, by their nature, time-consuming and expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 U.S. Dist. LEXIS 76751, 2017 WL 2214936, at *3 (E.D. Cal 2017).

As discussed above, this Action involves multiple claims under state and federal law, implicating several aspects of Defendants' operations, including Defendants' payment of wages and the management of meal and rest breaks. Even assuming Plaintiff could show that Defendants had unlawful policies and practices, Plaintiff would still have to set forth evidence to establish the extent to which a given employee missed

1    breaks and was not paid wages. In addition to increasing the complexity, expense and

2    duration of this litigation, the accumulation of individualized issues would raise a risk

3    of decertification in these proceedings.  This factor weighs in favor of approval.

4                        c.        The Amount Offered in Settlement

5            The amount offered in settlement is generally considered to be one of the most

6    important consideration of any class settlement. See *Kutzman v. Derrel's Mini Storage,*

7    *Inc.*, 2020 U.S. Dist. LEXIS 13314 (E.D. Cal. 2020). "Courts regularly approve class

8    settlements where class members recover less than one quarter of the maximum potential

9    recovery amount."  *Kutzman, supra,* 2020 U.S. Dist. LEXIS 13314, at *30.

10           As discussed above the settlement of $1,750,000 represents more than 27% of the

11   value of the maximum damages at issue in this case at the time this Settlement was

12   negotiated, assuming these amounts could be proven at trial.  This factor weighs heavily

13   in favor of approval.  Decl. Nordrehaug, ¶22.

14                        d.        The Extent of Investigation Completed

15           Class Counsel has conducted a thorough investigation into the facts of the class

16   action. Plaintiff obtained a production of documents and data points from the Defendant.

17   In advance of mediation, Defendants also provided information necessary for Class

18   Counsel to intelligently negotiate a settlement.  Decl. Nordrehaug at ¶26. Class Counsel

19   engaged in a thorough review and analysis of the relevant documents and data with the

20   assistance of an expert, Berger Consulting.  Accordingly, the agreement to settle did not

21   occur until Class Counsel possessed sufficient information to make an informed

22   judgment regarding the likelihood of success on the merits and the results that could be

23   obtained through further litigation.  Decl. Nordrehaug at ¶26.

24           Plaintiff engaged in a full investigation of the claims with the necessary data and

25   documentation.  The Parties then engaged in an all-day mediation, conducted by a

26   mediator with experience in employment class actions, engaged in additional settlement

27   negotiations post-mediation, and agreed to settle this Action pursuant to the terms and

28   conditions of a proposal provided by the mediator. Based on the foregoing information

and data and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendants for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate, and is in the best interest of the Class Members and in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and numerous potential appellate issues.    There can be no doubt that Counsel for the Parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation. Decl. Nordrehaug at ¶27.

In *Glass*, the Northern District of California recently granted final approval of an overtime and meal wage action even though no formal discovery had been conducted prior to the settlement:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." See *In re Mego Financial Corp. Securities Litigation*, 213 F.3d at 459.

2007 U.S. Dist. LEXIS 8476 at *14.

As in *Glass*, Plaintiff was in an equally sufficient position, and Plaintiff obtained the necessary information, as well as conduct independent investigations, interviews and due diligence to confirm the accuracy of the information supplied by Defendant.

## VI.    THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES

The proposed settlement meets all of the requirements for certifying a settlement class under Fed. R. Civ. Proc. 23(b)(2), and therefore, the Court may appropriately approve the Class as defined in the Agreement.  For purposes of settlement only, this Court should conditionally certify the Class defined as "all individuals who are or previously were employed by Defendants in California who were classified as non-exempt employees during the Class Period."  (Agreement at ¶ I(C).)

### A.    Rule 23 Of The Federal Rules Of Civil Procedure

Plaintiff seeks certification of this action for settlement purposes under Federal Rules of Civil Procedure 23(b)(3).  This portion of Rule 23 applies to class actions where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. Proc. 23(b)(3).

To maintain a class action under Rule 23(b)(3), the four prerequisites of Federal Rules of Civil Procedure 23(a) must first be satisfied.  These prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and are set forth in Rule 23(a) as follows:

(1)    the class is so numerous that joinder of all members is impracticable,
(2)    there are questions of law or fact common to the class,
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4)    the representative parties will fairly and adequately protect the interests of the class.

The Parties agree that, for purposes of settlement only, these requirements may be satisfied in this case, and therefore, the proposed Class should be certified for purposes of settlement only.

### B.    The Numerosity Requirement Is Satisfied

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. Proc. 23(a).  "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *EEOC v. Kovacevich "5" Farms*, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D. Cal. 2007); see also *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  Here, the Class is composed of approximately 768 individuals in the Class, which Plaintiff contends is sufficiently numerous for settlement purposes.  Decl. Nordrehaug at ¶28.

### C.    Common Questions Of Law And Fact Bind The Class

1    Rule 23(a) requires that there be a common question of law or fact. Rule 23(a) is

2  satisfied where "the course or conduct giving rise to the cause of action affects all class

3  members, and at least one of the elements of that cause of action is shared by all of the

4  class members." *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 575

5  (D. Minn. 1995). This requirement is met if common questions of liability are present,

6  even if there may be individual variations. *Hanlon*, *supra*, 150 F.3d at 1019; *Kurihara*

7  *v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224, *17 (N.D. Cal. 2007).

8    Here, Plaintiff contends that common questions of law and fact are present,

9  specifically the common questions of whether Defendants' employment practices were

10  lawful, whether Defendants miscalculated the regular rate when paying overtime,

11  whether Defendants failed to properly provide and/or pay for meal and rest periods,

12  whether the Defendants failed to provide reimbursement of cell phone expenses, whether

13  Defendants' conduct was willful, and whether the Class is entitled to compensation and

14  related penalties. Plaintiff contends that certification of this Class is appropriate because

15  Defendants purportedly engaged in uniform practices with respect to the Class Members.

16  As a result, these common questions of liability could be answered on a class wide basis.

17  Decl. Nordrehaug at ¶28. While Defendants dispute that the commonality requirement

18  may be satisfied for purposes of litigation, Defendants do not oppose such a finding for

19  purposes of this Settlement only.

20    **D.    The Plaintiff's Claims Are Typical Of The Class Claims**

21    The typicality requirement of Rule 23(a) requires that the members of the class

22  have the same or similar claims as the named plaintiff. "The typicality requirement is

23  met when the claims of the named plaintiff arise from the same event or are based on the

24  same legal theories." *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 608 (8th Cir. 1983). In

25  *Hanlon v. Chrysler Co.*, 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that

26  "[u]nder the rule's permissive standards, representative claims are 'typical' if they are

27  reasonably coextensive with those of absent class members; they need not be

28  substantially identical." 150 F.3d at 1020. Typicality "does not mean that the claims of

1  the class representative[s] must be identical or substantially identical to those of the

2  absent class members." *Stanton, supra*, at 957.

3      In the instant case, Plaintiff contends that the typicality requirement is fully

4  satisfied. Plaintiff, like every other member of the Class, was employed by Defendants

5  as non-exempt employee, and, like every other member of the Class, was subject to the

6  same employment practices concerning wages, meal and rest periods, and expense

7  reimbursement. Plaintiff, like every other member of the Class, also claims owed

8  compensation as a result of the Defendants' uniform policies and practices. Thus, the

9  claims of Plaintiff and the members of the Class arise from the same course of conduct

10 by Defendants, involve the same issues, and are based on the same legal theories. Decl.

11 Nordrehaug at ¶ 28. The typicality requirement of Rule 23 is met as to the common

12 issues presented. While Defendants dispute the typicality requirement may be satisfied

13 for purposes of litigation, Defendants do not oppose a finding of typicality for purposes

14 of this Settlement only.

15

16  **E.    The Class Representative Has Fairly And Adequately Protected The Interests Of The Class**

17      Plaintiff contends that Plaintiff provided adequate representation of the interests

18 of the Class in that: (a) his  attorneys are competent and experienced in class litigation

19 and generally able to conduct the proposed litigation; and (b) the Plaintiff does not have

20 interests antagonistic to those of the class. *White v. Local 942*, 688 F.2d 85 (9th Cir.

21 1982). Simply put, Rule 23 asks whether Plaintiff, as the Class Representative, will

22 vigorously prosecute the action on behalf of the class and have a basic understanding of

23 the claims. This requirement has been met here. First, Plaintiff is well aware of his

24 duties as the representatives of the Class and has actively participated in the prosecution

25 of this case to date. Plaintiff effectively communicated with Class Counsel, provided

26 documents and information to Class Counsel, and participated extensively in the

27 investigation of the Action. The personal involvement of the Plaintiff was essential to

28

1    the prosecution of the Action and the monetary settlement reached.  Decl. Nordrehaug

2    at ¶28.  Second, Plaintiff retained competent counsel with extensive experience in class

3    actions.  See Decl. Nordrehaug at ¶29 and Exhibit #2.  Third, there is no antagonism

4    between the interests of Plaintiff and those of the Class.  Both Plaintiff and the Class

5    Members seek monetary relief under the same set of facts and legal theories.  Under such

6    circumstances, there can be no conflicts of interest, and adequacy of representation is

7    presumed.  *In re Wirebound Boxes Antitrust Lit.*, 128 F.R.D. 268 (D. Minn. 1989).

8    While Defendants dispute that the adequacy requirement may be satisfied for purposes

9    of litigation, Defendants do not oppose such finding for this Settlement only.

10    ### F.    The Additional Requirements Of Rule 23 Are Satisfied

11    Since the requirements of Rule 23(a) have been satisfied, the Court now looks to

12    Rule 23(b)(3) in order to determine whether a class should be maintained under one of

13    the listed categories.  Under Rule 23(b)(3), a class action may be maintained if two basic

14    conditions are met.  First, common questions must predominate over individual issues,

15    and second, the class action must be superior to available other methods for the fair and

16    efficient adjudication of the controversy.

17    ### 1.    The Predominance Requirement Is Met

18    Rule 23(b)(3) provides that a class may be maintained if "the court finds that the

19    questions of law and fact common to the members of the class predominate over any

20    questions affecting only individual members."  A company-wide policy or practice can

21    establish predominance. *Kurihara*, 2007 U.S. Dist. LEXIS 64224,at *27. Where there

22    exist "broad employer policies [which] can impact many workers at once ... a need for

23    class treatment" is often present. *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229,

24    247 (C.D. Cal. 2006).

25    Here, Plaintiff contends that the adjudication of the common issues surrounding

26    Defendants' uniform and systematic employment policies applicable to non-exempt

27    employees could establish Defendants' liability on a class-wide basis.  Plaintiff contends

28    that Defendants engaged in a uniform course of failing to properly pay for wages,

1  provide meal/rest periods and provide expense reimbursement, which resulted in a

2  systematic failure to provide compensation as required by law and that Defendants'

3  policies with respect to these issues are uniform.   The only question is whether

4  Defendants' conduct supports a meritorious claim for liability.   Accordingly, Plaintiff

5  maintains that the common issues of law and fact present in this case predominate.  Decl.

6  Nordrehaug at ¶ 28.  While Defendants dispute that the predominance requirement may

7  be satisfied for purposes of litigation, Defendants do not oppose such a finding for

8  purposes of this Settlement only.

9  ### 2.    The Superiority Requirement Is Met

10  To certify a class, the Court must also determine "that a class action is superior to

11  other available methods for the fair and efficient adjudication of the controversy."  Fed.

12  R. Civ. Proc. 23(b)(3).   "Where classwide litigation of common issues will reduce

13  litigation costs and promote greater efficiency, a class action may be superior to other

14  methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

15  1996).  Here, a class action is the superior mechanism for the settlement of the claims as

16  pled by Plaintiff.   While Defendanst dispute that the superiority requirement may be

17  satisfied, Defendants do not oppose such a finding for purposes of this Settlement only.

18  ## VII.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

19  The Parties have agreed upon procedures by which the Class will be provided with

20  written notice of the Settlement similar to that approved and utilized in hundreds of class

21  action settlements.  The Class Notice includes information regarding the nature of the

22  Action; a summary of the substance of the Settlement, including Defendants' denial of

23  liability; the definition of the Class; the procedure and time period for objecting to the

24  Settlement, exclusion from the Settlement and participating in the Settlement; a

25  statement that the District Court has preliminarily approved the Settlement; and

26  information regarding the calculation of Settlement Shares. The Parties have jointly

27  drafted a Class Notice, attached to the Agreement as Exhibit A and is hereby submitted

28  for approval.

1    The Class Notice further explains the options for Class Members as to
2  participation, opt outs and objections.   Decl. Nordrehaug at ¶30. The Class Notice also
3  informs Class Members and Aggrieved Employees about the release applicable to them.
4  This notice program was designed to meaningfully reach the largest possible number of
5  potential Class Members, satisfies the requirements of due process, and is the best notice
6  practicable under the circumstances and constitutes due and sufficient notice to all
7  persons entitled thereto.  Decl. Nordrehaug at ¶31.  This notice satisfies the content
8  requirements for notice following the exemplar class notice in the *Manual for Complex
9  Litigation*, Second §41.43.  This notice also fulfills the requirement that class notices be
10 neutral. *Newberg*, at §8.39.

11 **VIII.    CONCLUSION**

12    The Parties have committed substantial amounts of time, energy, and resources
13 litigating and ultimately settling this case.   In the judgment of Plaintiff and Class
14 Counsel, the proposed settlement is a fair and reasonable compromise of the issues in
15 dispute in light of the strengths and weaknesses of each party's case and the uncertainty
16 of trial and appeal.   Accordingly, Plaintiff respectfully requests that the Court
17 preliminarily approve the proposed settlement, enter the proposed Preliminary Approval
18 Order submitted herewith, and schedule a Final Approval Hearing that is at least 120
19 days from the date of the Preliminary Approval Order.

20 Dated: October 29, 2021  BLUMENTHAL NORDREHAUG BHOWMIK
                           DE BLOUW LLP
21
22                         By:___*/s/ Norman Blumenthal*_____
                               Norman B. Blumenthal
23                             Kyle R. Nordrehaug
                               Attorneys for Plaintiff
24
25
26
27
28