1  **BLUMENTHAL NORDREHAUG BHOWMIK**
   **DE BLOUW LLP**
2  Norman B. Blumenthal (SBN 068687)
        Email: norm@bamlawca.com
3  Kyle R. Nordrehaug (SBN 205975)
        Email: Kyle@bamlawca.com
4  Aparajit Bhowmik (SBN 248066)
        Email: AJ@bamlawca.com
5  2255 Calle Clara
   La Jolla, CA 92037
6  Telephone: (858)551-1223
   Facsimile: (858) 551-1232
7  Website: www.bamlawca.com

8  Attorneys for Plaintiff

9

10

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15  JAKARI WILSON, an individual, on         CASE No.  **4:20-cv-05186-YGR**
16  behalf of himself and on behalf of all
    persons similarly situated,
17                                            **PLAINTIFF'S NOTICE OF MOTION**
                                              **AND MOTION FOR FINAL**
18                Plaintiff,                   **APPROVAL OF CLASS**
                                              **SETTLEMENT;**
19  vs.
                                              **MEMORANDUM OF POINTS AND**
20  WHOLESOME HARVEST                         **AUTHORITIES IN SUPPORT**
    BAKING, LLC, a Limited Liability
21  Company; BIMBO BAKEHOUSE
    LLC, a Limited Liability Company;         Hearing Date: September 13, 2022
22  and DOES 1 through 50, inclusive,         Hearing Time: 2:00 p.m.

23                                            District Judge: Hon. Yvonne Gonzalez
                  Defendants.                 Rogers
24
                                              Oakland Courthouse,
25                                            Courtroom 1 - 4th Floor

26                                            Action Filed: June 1, 2020

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on September 13, 2022, at 2:00 p.m. in the United States District Court for the Northern District of California, located at the Oakland Courthouse, Courtroom 1 - 4th Floor, 1301 Clay Street, Oakland, CA 94612, before District Judge Yvonne Gonzalez Rogers, Plaintiff Jakari Wilson ("Plaintiff") will move for final approval of the proposed class settlement with Defendants Wholesome Harvest Baking, LLC and Bimbo Bakehouse LLC ("Defendants").

This motion is brought pursuant to the Orders dated December 17, 2021 [Doc. No. 43] and March 30, 2022 [Doc. No. 45], and Fed. R. Civ. P. Rule 23(h). This motion is unopposed and based on the Class Action Settlement Agreement ("Settlement" or "Agreement") between the parties filed concurrently with this motion. There have been no objections to the Settlement by any member of the Class.

The motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Norman Blumenthal and attached exhibits, the Declaration of the Plaintiff, the Declaration of Madely Nava (the Settlement Administrator, the argument of counsel and upon such other material contained in the file and pleadings of this action.

Respectfully submitted,

Dated: August 5, 2022              BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW

                                   By:    _/s/ Kyle Nordrehaug_
                                          Kyle R. Nordrehaug
                                          Attorneys for Plaintiff

1

# **TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    SUMMARY OF THE LITIGATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   THE SETTLEMENT BEFORE THE COURT . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR THIS
       COURT TO GRANT FINAL APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE . . . . . . 10

       A.     The Test for Fairness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.     The Settlement Satisfies the Test for Fairness  . . . . . . . . . . . . . . . . . . 11

              1.     The Investigation and Discovery Are Sufficient to Allow
                     Class Counsel and the Court to Act Intelligently . . . . . . . . . . . 12

              2.     The Settlement Was Reached Through Arm's Length
                     Bargaining and Presents Adequate Relief for the Class . . . . . . 13

              3.     Counsel Is Experienced in Similar Litigation and Believes
                     the Settlement Is Fair and Reasonable to the Class  . . . . . . . . . 16

              4.     The Reaction of the Class Is Positive . . . . . . . . . . . . . . . . . . . . 17

              5.     The Strength of Plaintiff's Case and the Risks of Further
                     Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1

# TABLE OF AUTHORITIES

2

**Cases**:

3
*Armstrong v. Board of School Directors,*
  616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
4

*Brinker v. Superior Court,*
5
  53 Cal. 4th 1004 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6
*Cacho v. Eurostar, Inc.,*
  43 Cal. App. 5th 885 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
7

8
*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9
*Class Plaintiffs v. Seattle,*
  955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
10

11
*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
  213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12
*Duran v. U.S. Bank Nat'l Ass'n,*
  59 Cal. 4th 1 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13

14
*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
  630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15
*Garcia v. L.A. County Sheriff's Dep't,,*
  2015 U.S. Dist. LEXIS 192443 (C.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . 9
16

17
*Glass v. UBS Fin. Servs.,*
  2007 U.S. Dist. LEXIS 8476 (N.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . 13, 15

18
*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
19

20
*In re Austrian & German Bank Holocaust Litigation*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

21
*In re Heritage Bond Litig.,*
  2005 U.S. Dist. Lexis 13555 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 10
22

23
*Kirkorian v. Borelli,*
  695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

24
*Laskey v. Int'l Union,*
  638 F.2d 954 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
25

26
*Ling v. P.F. Chang's China Bistro, Inc.,*
  245 Cal. App. 4th 1242 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

27
*Lyons v. Marrud, Inc.,*
  1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . 11
28

*Maldonado v. Epsilon Plastics, Inc.*,
    22 Cal. App. 5th 1308 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nordstrom Commission Cases*,
    186 Cal. App. 4th 576 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Officers for Justice v. Civil Service Com'n, etc.*,
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stovall-Gusman v. W.W. Granger, Inc.*,
    2015 U.S. Dist. LEXIS 78671 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . 15

*Waits v. Weller*,
    653 F.2d 1288 (9th Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes, Rules and Regulations:**

California Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

California Labor Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Secondary Authorities:**

*Manual for Complex Litigation, Second* §30.44 (1993) . . . . . . . . . . . . . . . . . . . . . 8

Newberg & Conte, *Newberg on Class Actions*, (3d ed. 1992) §11.41 . . . . . . . . . . . . 8

## I.    INTRODUCTION

Plaintiff Jakari Wilson ("Plaintiff") and Defendants Wholesome Harvest Baking, LLC and Bimbo Bakehouse LLC ("Defendants") reached a full and final settlement of the above-captioned class action and PAGA action (the "Action"). Under the terms of the Class Action Settlement Agreement ("Agreement"), Defendants agree to pay One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) (the "Gross Settlement Amount") with no reversion in consideration for the settlement and the release of claims as described in the Agreement. This Court preliminarily approved the settlement by Order dated December 17, 2021. (Doc. No. 43.) In accordance with the Preliminary Approval Order and the Order to Shorten Class and PAGA Release Period and Reset Class Notice Period (Doc. No. 45), the required Class Notice of the proposed settlement was disseminated to the Class of 729 members. The results are that there are no objections and only one opt-out.

The purpose of this Final Approval Hearing is to determine whether the proposed settlement of the Action should be finally approved and for approval of the award of attorneys' fees and costs to be paid to Class Counsel and the Plaintiff's service award.[1] Plaintiff respectfully submits this Memorandum in support of his motion for final approval and the proposed entry of the Order granting final approval and judgment in this Action.

## II.    SUMMARY OF THE LITIGATION

The procedural history is set forth at length in the accompanying Declaration of Blumenthal ("Decl. Blumenthal") at paragraphs 6(a) through 6(i). Plaintiff initially filed the Class Action against Defendant in the Superior Court of California, Contra Costa County, and then also filed a separate PAGA Action against Defendant in the same Court based on the same factual allegations. Decl. Blumenthal, ¶¶ 6(a)-6(c). On July 29, 2021, Plaintiff filed an amended complaint ("Amended Complaint") [Doc. No. 32] which adds

---

[1] The Declaration of the Plaintiff is being filed in support of this motion.

the Fair Labor Standards Act ("FLSA") claim as a predicate violation to the Unfair Competition Law ("UCL") cause of action in the Action, and the PAGA claims as set forth in the PAGA Action, and the PAGA Action will be dismissed without prejudice so that approval of the entire settlement could be sought in this Action. (Decl. Blumenthal, ¶ 6(b).)

Class Counsel has extensive experience in litigating wage and hour class actions and PAGA actions in California and conducted significant discovery, research and investigation in furtherance of the prosecution of this Action. The Parties have vigorously litigated the Action since its inception. During the course of litigation, the Parties each performed analysis of the merits and value of the claims. This investigation, research and litigation included, among other things, (a) multiple conferences with Plaintiff's and Defendants' counsel; (b) inspection and analysis of hundreds of pages of documents and other information produced by Plaintiff and Defendants informally during the litigation of the Action and in preparation for mediation (including class data); (c) analysis of the numerous legal positions taken by Defendant; (d) investigation into the viability of class treatment of the claims asserted in the Action; (e) analysis of potential class-wide damages, including reviewing class data, and analyzing information sufficient to understand Defendants' potential defenses thereto; (f) research of the applicable law with respect to the claims asserted in the Complaint as well as the potential defenses thereto; and (g) assembling and analyzing extensive data and information for calculating damages. Plaintiff and Class Counsel believe that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interests of the Class in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendants would prevail on their defenses, and numerous potential appellate issues. (Decl., Blumenthal, ¶6(e).)

Defendants deny all allegations of wrongdoing and allege numerous affirmative defenses relating not only to Plaintiff's claims, but also to class certification. Defendants

assert facts that could negate essential elements of Plaintiff's claims. Defendants contend, for example, that their employees were able to take meal and rest breaks. Further, there could be significant problems of proof regarding the extent to which Class Members and Aggrieved Employees allegedly missed meal and rest breaks during the Class Period. (Decl. Blumenthal, ¶ 6(f).)

Following the investigation of the claims by both Parties, the Parties agreed to engage in private mediation. The Parties attended an all-day mediation on April 14, 2021 before Tripper Ortman, a respected and experienced mediator. The mediation included discussion and examination of the parties' respective positions on the legal and factual issues raised on behalf of the Class. At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length. At the conclusion of the mediation, the Parties were unable to reach a settlement. Through continued negotiations through the Mediator, culminating in a mediator's proposal, the Parties agreed on the basic terms of a class settlement. Class Counsel filed the motion requesting preliminary approval of the settlement on October 29, 2021. [Doc. No. 39.] (Decl. Blumenthal ¶ 6(g).)

By the Order of December 17, 2021, the Court granted preliminary approval of the settlement and approved the mailing of the Class Notice to the Class. [Doc. No. 43.] On March 30, 2022, the Court granted the Parties' joint stipulation to shorten the Class Period and PAGA Period to end on April 14, 2021. [Doc. No. 45]. On May 13, 2022, the Settlement Administrator mailed to the Class Members the Class Notice, which provided notice of the settlement and an explanation of monetary relief and the right to opt out of the Class, or object to the Settlement. (Decl. Blumenthal ¶ 6(h).)

Currently, out of the 729 individuals in the Class, not one Class Member objected, and only one (1) Class Member opted out of the Class, which means that currently 99.86% of the Class has elected to participate in the Settlement. The final results are detailed in the Declaration of the Settlement Administrator, Madely Nava ("Decl. Naca") filed and served herewith. (Decl. Blumenthal ¶ 6(i).)

1

### III.    THE SETTLEMENT BEFORE THE COURT

2      To implement the terms of this Settlement, Defendants agree to pay the Gross

3  Settlement Amount of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000)

4  in full and complete satisfaction of the Released Class Claims.  (Agreement at ¶ III(B).)

5  The Gross Settlement Amount consists of all payments to Class Members from the Net

6  Settlement Amount, plus (i) the Settlement Administration Expenses, (ii) the Class

7  Counsel Fees Payment and Class Counsel Litigation Expenses Payment, (iii) the PAGA

8  Payment, and (iv) the Class Representative Service Payment.   (Agreement at ¶

9  III(C)-(D).)  (Decl. Blumenthal ¶ 3(a).)

10      The amount remaining in the Gross Settlement Amount after the deduction of

11  Court-approved amounts for Settlement Administration Expenses, Class Counsel Fees

12  Payment, Class Counsel Litigation Expenses Payment, the PAGA Payment and the Class

13  Representative Service Payment (called the "Net Settlement Amount"), shall be

14  distributed to Participating Class Members as their Settlement Shares.  (Agreement at ¶¶

15  I(U) and (III)(D).)  (Decl. Blumenthal ¶ 3(b).)

16      From the Net Settlement Amount, the Settlement Share for each Participating

17  Class Member will be calculated by (a) dividing the Net Settlement Amount by the total

18  number of workweeks the Participating Class Members were employed by Defendants

19  during the Class Period to determine a dollar amount per week ("Weekly Rate"); and (ii)

20  multiplying the number of workweeks each Participating Class Member was employed

21  by Defendants by the Weekly Rate to calculate each Participating Class Member's

22  individual Settlement Share.  (Agreement at ¶ III(D)(2).)  (Decl. Blumenthal ¶ 3(c).)

23      Subject to Court approval, the Parties have agreed that $25,000 of the Gross

24  Settlement Amount will be allocated to the resolution of the PAGA Claim, of which 75%

25  ($18,750) shall be allocated to the Labor and Workforce Development Agency

26  ("LWDA") as the LWDA's share of the settlement of civil penalties and 25% ($6,250)

27  will be distributed *pro rata* to the Aggrieved Employees based on their respective pay

28  periods worked during the PAGA Period.  (Agreement at ¶ III(C)(3).)  The LWDA was

1   served with the Agreement both at the time of preliminary approval and again with this

2   motion, and the LWDA has not indicated any objection to this Settlement. (Decl.

3   Blumenthal ¶3(d).)

4        ILYM Group was appointed as Settlement Administrator (Agreement at ¶ III(G).)

5   All administrative fees, costs and expenses incurred by the Settlement Administrator in

6   connection with administering the Settlement will be deducted from the Gross Settlement

7   Amount. The actual expenses of the Settlement Administrator are $20,000 as outlined

8   in the Declaration of the Madely Nava at ¶16. (Decl. Blumenthal ¶ 3(e).)

9        Class Counsel has applied to the Court for an award of reasonable attorneys' fees

10  in an amount not to exceed one-third (1/3) of the Gross Settlement Amount, and for

11  reimbursement of reasonable expenses in the amount of $16,477.55, both subject to

12  Court approval.  (Agreement at ¶ III(C)(2)). The Plaintiff has also applied for Court

13  approval of service awards in an amount not to exceed $10,000 in consideration for his

14  service as the class representative. (Agreement at ¶ III(C)(1).) The motion is scheduled

15  for the Final Approval Hearing and was filed and posted on June 10, 2022, which was

16  well before the deadline for written objections to the Settlement. (Decl. Blumenthal ¶

17  3(f).)

18       The scope of the release by all Class Members who do not opt out tracks the scope

19  of the  allegations in the Action.  As of the Effective Date, Defendants shall be entitled

20  to a release from the Participating Class Members of all Released Class Claims, which

21  are:

22       any and all wage and hour claims, obligations, demands, actions, rights,
         causes of action, and liabilities (including state statutory and common law
23       claims) alleged in the Action, or that could have been alleged based on the
         facts alleged in the Action, that arose during the Class Period, including: (a)
24       failure to pay overtime; (b) failure to pay minimum wages; (c) failure to
         timely pay wages during employment; (d) failure to pay final wages on
25       termination; (e) failure to provide accurate itemized wage statements; (f)
         failure to provide compliant meal and rest periods; (g) failure to pay meal
26       and rest period premiums; (h) failure to reimburse for business-related
         expenses; (i) failure to pay wages due to discharged and quitting
27       employees; (j) failure to maintain required records; (k) claims that are or
         were asserted or that could have been asserted based on the facts alleged in
28       the Action; and (l) penalties (including civil and statutory penalties,

1    including penalties under PAGA), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or

2    additional damages which allegedly arise from the claims described in (a) through (k) above under any applicable law, which arose during the Class

3    Period, and expressly excluding all other claims, including claims for wrongful termination, unemployment insurance, disability, social security,

4    workers' compensation, and class claims outside of the Class Period and PAGA claims outside of the PAGA Period.

5    (Agreement at ¶ III(I)(1).)  (Decl. Blumenthal ¶ 3(g).)

6
        The scope of the release by all Aggrieved Employees tracks the scope of the

7    allegations in the Action.  As of the Effective Date, all Aggrieved Employees shall

8    irrevocably release the following claims against Defendants and the Released Parties

9    from:

10
        all PAGA claims for civil penalties alleged in any versions of the

11    complaints filed in the Action and letters to the LWDA which arose during the PAGA Period, excluding all other claims and PAGA claims outside of

12    the PAGA Period ("Released PAGA Claims"). The release of the Released PAGA Claims shall be effective as to all Aggrieved Employees regardless

13    of whether an Aggrieved Employee submitted a request for an exclusion from the Class, objected to the Settlement, and/or cashed their check(s) for

14    their individual Settlement Share and/or allocation of the PAGA Payment, and the Action shall be dismissed with prejudice as to the Released PAGA

15    Claims.

16    (Agreement at ¶ III(I)(2).)  (Decl. Blumenthal, ¶ 3(g).)

17        Class Members were permitted the opportunity to object to or comment on the

18    Settlement; or elect not to participate in the Settlement. Class Members who wished to

19    exclude themselves from the Settlement must either have mailed a signed Election Not

20    to Participate in Settlement to the Settlement Administrator no later than forty-five (45)

21    days after the Settlement Administrator mailed the Class Notice. (Agreement at ¶

22    III(H)(3)(b).) (Decl. Nava, Exh. A.) Class Members who wished to object to the

23    Settlement must have submitted their written objections to the Settlement Administrator

24    not later than forty-five (45) days after the mailing of the Class Notice or alternatively

25    may appear at the Final Approval Hearing to make an oral objection. (Agreement at ¶

26    III(H)(3)(a).) To date, there have been no objections and only one opt out. (Decl.

27    Blumenthal ¶ 3(h); Decl. Nava at ¶¶ 13-14.)

28        The Settlement is fair, adequate and reasonable to the Class and Aggrieved

Employees and should be finally approved. In sum, this settlement valued at $1.750,000 provides the Class Members and Aggrieved Employees with the opportunity to receive a substantial monetary recovery. This result is particularly remarkable in light of the fact that there was also a risk that, if the matter was not settled, Plaintiff would be unable to certify the class action, demonstrate the manageability of the PAGA action, or prevail at trial on behalf of the entire Class and Aggrieved Employees, and thereby not recover on behalf of any individual. As such, liability in this case was far from certain in light of the defenses asserted by Defendants. Finally, the pandemic circumstances impacting many employees only further underscores the importance of distributing these settlement payments to the Class Members and Aggrieved Employees. (Decl. Blumenthal ¶ 3(i).)

## IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. 2 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) at §11.41, p.11-87. Court approval of a class settlement is considered at a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. *See Manual for Complex Litigation, Second* §30.44 (1993). During final approval, the court must determine whether the settlement is fair, reasonable and adequate. *See Officers for Justice v. Civil Service Com'n, etc.*, 688 F.2d. 615, 625 (9th Cir. 1982) and Fed. Rules Civ. Proc., rule 23(e).

Governing the settlement of class actions, the Federal Rules of Civil Procedure, §23 (e) specifically provides for the Court to consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As set forth herein, this Settlement was reached through arm's-length negotiations. The Settlement was negotiated by experienced counsel for the Class and represented by an adequate Class Representative, who protected the interests of the Class Members. There were complex legal and factual issues that placed the ultimate outcome of this litigation in doubt. Accordingly, the immediate value of the Settlement to the Class Members and Aggrieved Employees far outweighs the possibility of relief if this protracted and expensive litigation had continued through trial and appeal. Finally, the considered judgment of all Parties to the Settlement is that the Settlement is fair and reasonable in light of the immediate benefit provided by the Settlement to the Class Members and Aggrieved Employees, which is a conclusion that is reinforced by the response of the Class Members participating in the Settlement.

Settlements of disputed claims are favored by the courts. *Waits v. Weller*, 653 F.2d 1288, 1291 (9th Cir 1981) ("settlement encouraged in appropriate class action settlements"). In evaluating settlements, the courts have long recognized that compromise is particularly appropriate since such litigation is difficult and notoriously uncertain. Settlement is especially favored in class actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial resources. *Officers for Justice*, 688 F.2d at 625 ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("This is especially true in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *Garcia v. L.A. County Sheriff's Dep't*, 2015 U.S. Dist. LEXIS 192443, *40 (C.D. Cal. 2015) (citing policy favoring settlement in complex class litigation).

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. Under this standard, the court must decide whether the proposed settlement falls within the range of reasonable settlements, taking into account that settlements are compromises between the parties reflecting subjective, unquantifiable judgments concerning the risks and possible outcomes of litigation. *Id.*

In cases such as this one, courts have repeatedly emphasized that there is a strong initial presumption that the compromise is fair and reasonable. *In re Heritage Bond Litig.*, 2005 U.S. Dist. Lexis 13555, at *11 (C.D. Cal. 2005). Courts are advised not to adjudicate the merits of the action, nor substitute their judgment for that of the parties who negotiated the settlement, nor should they reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement. *Id.*, at *11; *Officers for Justice*, 688 F.2d at 625.

The essential evaluation is whether, given the risks of litigation and the range of probable results, the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, 688 F.2d at 625; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Here, the facts and circumstances compel the conclusion that the proposed settlement satisfies that standard.

## V.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    The Test for Fairness

To determine whether a settlement is fair, reasonable, and adequate, courts consider factors such as: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

1    counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

2    members to the proposed settlement." *Churchill v. Gen. Elec.*, 361 F.3d 566, 575 (9th

3    Cir. 2004); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

4         The list of factors is not exhaustive and should be tailored to each case. *Officers*

5    *for Justice*, at 625. Due regard should be given to what is otherwise a private consensual

6    agreement between the parties. *Id.* The inquiry "must be limited to the extent necessary

7    to reach a reasoned judgment that the agreement is not the product of fraud or

8    overreaching by, or collusion between, the negotiating parties, and that the settlement,

9    taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*, at 625.

10   "Ultimately, the [trial] court's determination is nothing more than 'an amalgam of

11   delicate balancing, gross approximations and rough justice." *Id.*

12        The question whether a proposed settlement is fair, reasonable and adequate

13   necessarily requires a judgment and evaluation by the attorneys for the parties based

14   upon a comparison of "'the terms of the compromise with the likely rewards of

15   litigation.'" *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464

16   U.S. 818 (1983) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer*

17   *Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). Therefore, many courts recognize

18   that the opinion of experienced counsel supporting the settlement is entitled to

19   considerable weight. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed*

20   *v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger*, 698 F.2d at

21   74; *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher*

22   *Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985). For

23   example, in *Lyons v. Marrud, Inc.*, 1972 U.S. Dist. LEXIS 13401, *5 (S.D.N.Y. 1972),

24   the court noted that "[e]xperienced and competent counsel have assessed these problems

25   and the probability of success on the merits. They have concluded that compromise is

26   well-advised and necessary. The parties' decision regarding the respective merits of their

27   position has an important bearing on this case." *Id.* at *5.

28       **B.**    **The Settlement Satisfies the Test for Fairness**

1            1.    <u>The Investigation and Discovery Are Sufficient to Allow Class</u>
2                  <u>Counsel and the Court to Act Intelligently</u>

3        As detailed during Preliminary Approval, Class Counsel has conducted a thorough
4    investigation into the facts of the class and PAGA action, including a review of relevant
5    documents and data and a diligent investigation of the Class Members' and Aggrieved
6    Employees' claims against Defendants. Class Counsel also retained an expert to prepare
7    a damage valuation for use in the mediation and negotiations. Class Counsel also has
8    experience in settlements involving similar claims brought by employees. The Parties
9    and their counsel recognize that, in the absence of an approved settlement, they would
10   face a protracted litigation course, including but not limited to a contested motion for
11   certification, motions for summary judgment, and trial and appellate proceedings that
12   would consume time and resources and present each of them with ongoing litigation
13   risks and uncertainties. (Decl. Blumenthal at ¶ 7(a).)

14       Plaintiff and Class Counsel recognize the expense and length of continuing to
15   litigate and trying this Action against Defendant through possible appeals which could
16   take several years, especially in complex actions such as this litigation. Class Counsel
17   is also mindful of and recognize the inherent problems of proof under, and alleged
18   defenses to, the claims asserted in the Action. Based on the foregoing documents and
19   data, and their own independent investigation and evaluation, Class Counsel is of the
20   opinion that the settlement with Defendants for the consideration and on the terms set
21   forth in the Settlement is fair, reasonable, and adequate in light of all known facts and
22   circumstances, including the risk of significant delay, defenses asserted by Defendants,
23   and numerous potential appellate issues. Based upon their evaluation, Plaintiff and Class
24   Counsel have determined that the settlement set forth in the Agreement is in the best
25   interest of the Class Members and Aggrieved Employees. (Decl. Blumenthal at ¶ 8(d).)

26       Class Counsel has litigated similar wage and hour cases against other employers.
27   (Decl. Blumenthal at ¶ 2.) Although Plaintiff and Class Counsel believed that the case
28   had merit, they recognized the potential risks both sides would face if litigation of this

1  Action continued. As the federal court held in *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist.

2  LEXIS 8476 (N.D.Cal. 2007), where the parties faced uncertainties similar to those in

3  this litigation:

> In light of the above-referenced uncertainty in the law, the risk, expense,
> complexity, and likely duration of further litigation likewise favors the
> settlement. Regardless of how this Court might have ruled on the merits of
> the legal issues, the losing party likely would have appealed, and the parties
> would have faced the expense and uncertainty of litigating an appeal. "The
> expense and possible duration of the litigation should be considered in
> evaluating the reasonableness of [a] settlement." See *In re Mego Financial
> Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000). Here, the
> risk of further litigation is substantial.

9  *Id.* at *12.

10     Negotiations were hard-fought and aggressive with capable advocacy on both

11  sides. Defendants vigorously disputed liability and the amount of damages that were

12  claimed to be owed. Liability in this action was hotly disputed and would be subject to

13  a motion for summary judgment. Even if summary judgment was denied, liability would

14  still be subject to a contested trial on the merits. (Decl. Blumenthal at ¶ 7(b).)

15     Based on the complexity of the case, the novelty of the legal issues, the substantial

16  risks and uncertainty of the outcome on both liability and certification issues, as well as

17  the need to establish damages, Plaintiff believes that the Settlement is fair, reasonable

18  and in the best interests of the Class Members. There can be no doubt that counsel for

19  both the Parties possessed sufficient information to make an informed judgment

20  regarding the likelihood of success on the merits and the results that could be obtained

21  through further litigation, given the relative strengths and weaknesses of their position.

22  (Decl. Blumenthal at ¶ 7(e).)

23          2.    The Settlement Was Reached Through Arm's Length Bargaining and
24                Presents Adequate Relief for the Class

25     Settlement negotiations took place between experienced counsel and were

26  contentious and arm's length. Plaintiff and Class Counsel recognize the expense and

27  length of continuing to litigate and trying this Action against Defendant through possible

28  appeals which could take several years. Class Counsel has also taken into account the

uncertain outcome and risk of litigation, especially in complex actions such as this litigation. Class Counsel is also mindful of and recognize the inherent problems of proof under, and alleged defenses to, the claims asserted in the Action. Based upon their evaluation, Plaintiff and Class Counsel believe that the settlement with Defendants for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interest of the Class Members and Aggrieved Employees in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendants would prevail on one or more of its defenses, and numerous potential appellate issues. By reason of the settlement, Defendants agree to pay the Gross Settlement Fund of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) as provided by the Agreement. (Decl. Blumenthal at ¶7(b).)

In advance of settlement negotiations, Class Counsel received class data concerning the Class, which permitted Class Counsel to make an intelligent evaluation. For the individuals whose claims are at issue in this Action, Class Counsel reviewed the data and used information provided by Defendants to determine the potential damage valuation. The calculations to compensate for the amount due for the Class at the time of the mediation were calculated by Berger Consulting, Plaintiff's damage expert. Using the class data, based upon the analysis of Plaintiff's expert, Plaintiff calculated that the maximum valuation for mediation as follows: off the clock damages due to rounding were $188,768, unpaid overtime wages dues to the miscalculation of the regular rate were $39,733, meal period damages were $2,219,198 based upon an alleged 58% potential violation rate from time punch data, rest period damages were $3,660,320 based upon an alleged 100% violation rate under Plaintiff's theory of rest periods being cut short, and unreimbursed expenses damages were $325,346. As a result, Plaintiff's total damage valuation at mediation, not counting potential penalties, was $6,433,364. As to penalties, Plaintiff's expert calculated the maximum wage statement penalties to be $1,083,700 and the maximum waiting time penalties to be $2,035,683, however, these wage statement and waiting time penalties claims potentially have a much smaller value,

even if damages were awarded, to the extent that they are derivative of the meal and rest break claims.[2]  Plaintiff's exposure theories and calculations regarding the maximum damages and/or penalties purportedly owed to the Class are vigorously disputed by Defendants. (Decl. Blumenthal ¶ 7(d).)

Consequently, the Gross Settlement Amount of $1,750,000 represents more than 27% of Plaintiff's calculated value of the damages at issue in this case at the time this Settlement was negotiated, assuming these amounts could be proven at trial. Given the amount of the settlement as compared to the potential value of claims in this case and the defenses asserted by Defendants, this settlement is fair and reasonable.[3]  (Decl. Blumenthal ¶ 7(d).)

The Parties attended an all-day mediation on April 14, 2021 before Tripper Ortman, a respected and experienced mediator.  The mediation included discussion and

---

[2]  While Plaintiff alleged claims for statutory penalties pursuant to Labor Code Sections 203 and 226, at mediation Plaintiffs recognized that these claims were subject to various defenses asserted by Defendant, including, but not limited to, a good faith dispute defense as to whether any premium wages for meal or rest periods or other wages were owed given Defendant's position that Plaintiff were properly compensated.  *See Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due.").  Additionally, Courts had held that violations of the meal and rest period regulations, which require payment of a "premium wage" for each improper meal period, do **not** give rise to claims under sections 203 and 226.  *See Ling v. P.F. Chang's China Bisto, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) and *Maldonado v. Epsilon Plastics*, Inc., 22 Cal. App. 5th 1308, 1336 (2018).  As a result, at the time of mediation the viability of Plaintiff's claims on these theories was uncertain.

[3]  See *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007) (approving a settlement where the settlement amount constituted approximately 25% of the estimated overtime damages for the class); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. 2015) (granting final approval where "the proposed Total Settlement Amount represents approximately 10% of what class might have been awarded had they succeeded at trial."); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming approval of a class settlement which represented "roughly one-sixth of the potential recovery".)

examination of the parties' respective positions on the legal and factual issues raised on behalf of the Class.   At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.  At the conclusion of the mediation, the Parties were unable to reach a settlement.  Through continued negotiations through the Mediator, culminating in a mediator's proposal, the Parties agreed on the basic terms of a class settlement. (Decl. Blumenthal ¶ 6(g).)

After the settlement negotiations, the specific terms of the Agreement required additional negotiation before the final written agreement could be signed. Even after the Parties reached an agreement as to the material terms, Class Counsel had to ensure that the terms of the final settlement agreement were fair to every member of the Class and Aggrieved Employees and that the Class received the requisite opportunities for notice, exclusion, and objection in accordance with class action law. (Decl. Blumenthal at ¶7(c).)

Plaintiff filed the motion for preliminary approval of the settlement, and by the Order dated December 17, 2022, the Court granted preliminary approval of the settlement and approved the mailing of the Class Notice to the Class. (Doc. No. 43.) On May 13, 2022, the Settlement Administrator mailed the Class Notice to the 729 Class Members, which gave them notice of the Parties' settlement and an opportunity to claim monetary relief, object, or opt out. (Decl. Blumenthal at ¶6(i).)

3.   Counsel Is Experienced in Similar Litigation and Believes the Settlement Is Fair and Reasonable to the Class

Class Counsel in this matter has extensive class action experience in many fields and has represented thousands of employees in actions including labor and employment litigation, wage and hour class actions, representative PAGA actions and complex litigation. Class Counsel has been previously approved as experienced Class Counsel by state and federal courts throughout California, and courts have found that Class Counsel has substantial experience handling large employment related class actions and has been found to be qualified class counsel in prior actions. A list of previous and current class

1  action cases managed and settled by the Class Counsel in this action is provided to the
2  Court by way of the Declaration of Norman Blumenthal. Class Counsel have participated
3  in every aspect of the settlement discussions and have concluded the settlement is fair,
4  adequate and reasonable and in the best interests of the Class. (Decl. Blumenthal at ¶ 2.)

5  4.    The Reaction of the Class Is Positive

6  After dissemination of the Class Notice to the 729 members of the Class, which
7  provided each Class Member with the terms of the settlement, to date, not a single Class
8  Member has filed an objection to the settlement, and only one has requested exclusion.
9  As a result, 99.86% of the Class will be participating in the Settlement and will be sent
10  a payment. (Decl. Blumenthal ¶ 4.) The absence of any objector strongly supports the
11  fairness, reasonableness and adequacy of the Settlement. *See In re Austrian & German*
12  *Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small
13  number of objections are received, that fact can be viewed as indicative of the adequacy
14  of the settlement."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d. Cir. 1990)
15  (29 objections out of 281 member class 'strongly favors settlement'); *Laskey v. Int'l*
16  *Union*, 638 F.2d 954 (6th Cir. 1981) (The fact that 7 out of 109 class members objected
17  to the proposed settlement should be considered when determining fairness of
18  settlement.)

19  Importantly, every Class Member was given the opportunity to participate in the
20  Settlement under the same terms. To date, almost the entire Class has elected to
21  participate in the Settlement and will be mailed a check for their settlement share.
22  Similarly, every Aggrieved Employee will be mailed a check of their share of the PAGA
23  Payment.  The details of the notice process are set forth in the Declaration of Madely
24  Nava, the Settlement Administrator. Here, given the fact that not one Class Member
25  objected, the Court should conclude that the settlement is fair, reasonable and adequate.
26  (Decl. Blumenthal ¶ 4.)

27  5.    The Strength of Plaintiff's Case and the Risks of Further Litigation
28  In advance of settlement negotiations and mediation, Class Counsel conducted a

thorough investigation into the facts of the Action, including a review of relevant documents and data and a diligent investigation of the Class Members' and Aggrieved Employees' claims against Defendants. Class Counsel also retained an expert to prepare a damage valuation in advance of mediation. Class Counsel also has experience in settlements involving similar claims against other employers. Based on the foregoing documents and data, and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendants for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and numerous potential appellate issues. The Parties and their counsel recognize that, in the absence of an approved settlement, they would face a protracted litigation course, including a contested motion for certification, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties. (Decl. Blumenthal at ¶ 8(c).)

The risks, complexities and duration of further litigation cannot be overstated. Defendants asserted a number of defenses that presented serious threats to the claims of the Plaintiff and the other Class Members. Here, a number of defenses asserted by Defendants presented serious threats to the claims of Plaintiff and the other Class Members. Defendants argued that all work time was paid for and that the regular rate calculation was lawful. Defendants contend that their meal and rest period policies fully complied with California law and that Defendants' timekeeping system recorded meal periods, and was not required to record rest periods. Defendants argued that the California Supreme Court decision in *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012), weakened Plaintiff's claims, on liability, value, and class certifiability. Defendants argued that any late or short meal periods were the voluntary decision of the employee, and not the result of a failure of Defendants to provide a meal or rest period. Defendants also argue that based on their facially lawful practices, they acted in good

1    faith and without willfulness, which if accepted would negate the claims for waiting time

2    penalties and/or inaccurate wage statements.  In fact, under the current state of the law,

3    it is questionable whether these penalties could be awarded at all based upon the alleged

4    meal and rest period violations as several Courts have held that meal and rest period

5    violations do not give rise to wage statement or waiting time penalties. *See e.g. Ling v.*

6    *P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016).   Finally,

7    Defendants assert defenses to the amount of damages claimed and the imposition of any

8    penalties.  If successful, Defendants' defenses could eliminate or substantially reduce any

9    recovery to the Class.  While Plaintiff believes that these defenses could be overcome,

10   Defendants maintain these defenses have merit and therefore present a serious risk to

11   recovery for Plaintiff, the Class Members, and the Aggrieved Employees.    (Decl.

12   Blumenthal ¶ 8(a).)

13          Moreover, there was also a significant risk that, if the Action was not settled,

14   Plaintiff would be unable to obtain class certification and maintain a certified class

15   through trial or demonstrate that his PAGA claim is manageable, and thereby not recover

16   on behalf of any employees other than himself.  Plaintiff is aware of cases where class

17   certification of similar claims was denied. *See e.g. Cacho v. Eurostar, Inc.*, 43 Cal. App.

18   5th 885 (2019) (denying certification of meal and rest break claims).  At the time of the

19   mediation, Defendants forcefully opposed the propriety of class certification and the

20   manageability of Plaintiff's PAGA claim, arguing that individual issues precluded such

21   findings.  Further, as demonstrated by the California Supreme Court decision in *Duran*

22   *v. U.S. Bank National Assn.*, 59 Cal. 4th 1 (2014), there are significant hurdles to

23   overcome for a class-wide recovery even where the class has been certified.  While other

24   cases have approved class certification in wage and hour claims, class certification in this

25   action would have been hotly disputed and was by no means a foregone conclusion.

26   (Decl. Blumenthal at ¶ 8(b).)

27          Plaintiff and Class Counsel recognize the expense and length of continuing to

28   litigate and trying this Action against Defendant through possible appeals which could

take several years. Class Counsel has also taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this litigation. Class Counsel is also mindful of and recognize the inherent problems of proof under, and alleged defenses to, the claims asserted in the Action. Based upon their evaluation, Plaintiff and Class Counsel have determined that the settlement set forth in the Agreement is in the best interest of the Class Members and Aggrieved Employees. (Decl. Blumenthal at ¶8(d).)

It is impossible to predict with certainty whether, under the facts of this case, Plaintiff would prevail against the Defendants' factual and legal defenses. While Plaintiff and Class Counsel believe in the merits of the claims, Defendants have asserted real and substantial defenses to them. Settlement in this case clearly benefits the settlement class when measuring the strengths of the case and the risk of establishing liability and damages. (Decl. Blumenthal at ¶8(e).)

## VI.   CONCLUSION

For the reasons stated herein and in the accompanying declarations, Plaintiff respectfully submits that the proposed settlement is fair, reasonable and adequate to the Class and to each Class Member and Aggrieved Employee, and should therefore be finally approved.

Dated: August 5, 2022          BLUMENTHAL NORDREHAUG BHOWMIK
                               DE BLOUW LLP


                               By:___*/s/ Kyle Nordrehaug*_____
                                  Kyle R. Nordrehaug
                                  Attorneys for Plaintiffs